In the Matter of Juan Enrique
ROSARIO DIAZ, Gladymar
Rosado Marrero, Debtors.

American Airlines Employees Federal
Credit Union, Plaintiff

v.

Juan Enrique Rosario Diaz; Gladymar
Rosado Marrero; John A. Zerbe,
Defendants.

Civil No. 02–2146 (JAG).

United States District Court,
D. Puerto Rico.

Dec. 7, 2004.

Anibal Medina–Rios, Anibal Medina Law Office, Bayamon, PR, for Appellant.

John A. Zerbe, Rio Piedras, PR, pro se.

Wilda Rodriguez–Plaza, Goldman Antonetti & Cordova, San Juan, PR, for Appellee.

Jose R. Carrion–Morales, San Juan, PR, pro se.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On May 22, 1998, Juan Enrique Rosario Diaz ("Rosario") and Gladymar Rosado Marrero ("Rosado") (collectively "Debtors") filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Docket No. 6, App. p. 1). On October 2, 1998, American Airlines Employees Federal Credit Union ("AAFCU") filed a complaint against Debtors contesting the dischargeability of their claim pursuant to 11 U.S.C. § 523(a)(2)(A) (Adversary Docket No. 1). Trial was held on December 8, 1999 and continued on July 28, 2000 (Adversary Docket Nos. 35 and 43). On July 26, 2001, the Bankruptcy Court entered a Decision and Order dated July 19, 2001, declaring that the debt with AAFCU was not dischargeable as to Rosario pursuant to 11 U.S.C. § 523(a)(2)(A)

(Adversary Docket No. 55). On April 29, 2002, Debtors filed a notice of appeal with the Bankruptcy Court (Adversary Docket No. 60). On August 2, 2002, the Bankruptcy Court record was transmitted to this Court (Docket No. 1). For the reasons discussed below the Court **AFFIRMS** the judgment of the Bankruptcy Court.

## FACTUAL AND PROCEDURAL BACKGROUND

AAFCU is a Federal Credit Union organized under the Federal Credit Union Act and authorized to do business in the Commonwealth of Puerto Rico. Rosario is a member of AAFCU. On March 26, 1998, Rosario requested a loan from AAFCU in the amount of $16,147.54 in order to refinance a Ford Taurus ("the car") he had originally bought from R. Rodriguez Hermanos Auto Sales ("the car dealer") on February 11, 1998. In exchange for the money, Rosario agreed to grant AAFCU a security agreement and lien over the car. With this in mind, Rosario was to deliver to AAFCU the Registration and Certificate of Title of the Motor Vehicle ("Registration and Certificate of Title") within 30 days of the receipt of the loan.

Charlie Calderon ("Calderon"), the loan officer at AAFCU, delivered to Rosario the $16,147.54 he had requested. Rosario then signed a Loanliner Advance Request Voucher and Security Agreement for that amount, with interest at the yearly rate of 8.75%. Rosario also signed a Conditional Sale Contract over the car. On that same date, AAFCU made a check in favor of Ponce Federal Bank for the amount of $18,973.54 (the $16,147.54 loan, plus $2,826 from Rosario's savings account).

The car dealer was not in possession of the Registration and Certificate of Title when Rosario bought it. In fact, the car dealer did not obtain said title until May 6, 1998, well past the 30 days Rosario had to surrender the Registration and Certificate

of Title to AAFCU. When Calderon did not receive the Registration and Certificate of Title on time, he contacted Rosario by telephone and mail. Rosario never informed Calderon that there were difficulties in obtaining the document. On May 26, 1998, Rosario received the Registration and Certificate of Title. By that time, Debtors had already filed a petition for bankruptcy. Rosario never surrendered the Registration and Certificate of Title to AAFCU. In fact, sometime in or around August, 1998, Rosario telephoned Calderon to tell him that if he needed the Registration and Certificate of Title, he should contact his bankruptcy lawyer.

## DISCUSSION

A. *Standard of Appellate Review of Bankruptcy Court Orders*

■ When reviewing the decision of a bankruptcy court, a district court evaluates the bankruptcy court's factual findings under a clear error standard, and its conclusions of law under a *de novo* standard. *See In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991); *Matter of Torres Lopez*, 138 B.R. 348, 349 (D.P.R.1992). A factual finding is "clearly erroneous" only when the appellate court is left "with the definite and firm conviction that a mistake has been committed." *In re The Bible Speaks*, 869 F.2d 628, 630 (1st Cir.1989) (*quoting Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). This Court will now address the issues brought by Rosario on appeal.

B. *Whether the Bankruptcy Court erred in evaluating the evidence at trial.*

■ The Supreme Court held, in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the correct standard to establish an exception to discharge under 11 U.S.C. § 523(a)(2)(A) is preponderance of the evidence. *Grogan*, 498 U.S. at 286–88, 111 S.Ct. 654. According-

ing to Bankruptcy Rule 8013, however, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.Rule 8013. Thus, absent clear error, this Court is to give deference to the Bankruptcy Court's factual findings.

Debtors have not persuaded this Court that the Bankruptcy Court erred in its assessment of the evidence in record. The Bankruptcy Court, in its Decision and Order, explained how it evaluated the evidence and whose testimony it gave more weight to (Adversary Docket No. 55). After a careful evaluation of the record at hand and the Bankruptcy Court's reasoning, and giving due consideration to the Bankruptcy Court's opportunity to appraise the credibility of the witnesses, this Court cannot say that the Bankruptcy Court erred in its evaluation. Therefore, the first error raised on appeal was not committed.

C. *Whether the Bankruptcy Court erred in not applying the principle that the fraud-based exemptions to discharge are construed narrowly in the debtor's favor.*

■ "Exceptions to the discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and for that reason, the claimant must show that his claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997). The statutory requirements for a discharge exception are "construed liberally in favor of the debtor." *Boroff v. Tully*, 818 F.2d 106, 110 (1st Cir.1987). On the other hand, "certain sections of the law, like § 523(a)(2)(A), are intended to make certain that bankruptcy protection is not afforded to debtors who have obtained property by means of a fraudulent mis-

representation." *Palmacci*, 121 F.3d at 786. Because it is the Court's opinion that the Bankruptcy Court did not err upon finding that Rosario made a fraudulent misrepresentation to AAFCU and that AAFCU had a justification for relying on such misrepresentation, the Court cannot depart from established case law determining that the protection of bankruptcy law will not extend to fraudulent actions.

D. *Whether the Bankruptcy Court lacked jurisdiction over the dischargeability complaint.*

█ Debtors' claim that the Bankruptcy Court lacked jurisdiction over the dischargeability complaint alleging that AAFCU filed said complaint after the deadline. In an order clarifying the extension dates that AAFCU received, the Bankruptcy Court explained that, even if the original deadline for filing complaints was August 24, 1998, AACFU filed a notice of appearance and requested an extension of thirty days to file an objection to discharge on August 21, 1998. On September 4, 1998, the Bankruptcy Court granted the extension which would have expired on October 4, 1998 (Docket No. 18). AAFCU filed its dischargeability complaint on October 2, 1998, thus, the complaint was timely (Adversary Docket No. 1). Considering this scenario, the Court is forced to conclude that the Bankruptcy Court had jurisdiction over the matter and that Debtors' claim lacks merit.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the judgment of the Bankruptcy Court.

IT IS SO ORDERED.